**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSE BERRUM-PLATA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 12 C 2065 |
| ) | |
| FBI Agent BRETT CURTIS, ) | |
| individually and in his official ) | |
| capacity, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the court is defendant FBI Agent Brett Curtis's motion for summary judgment. We grant the defendant's motion for the reasons explained below.

## BACKGROUND

Plaintiff Jose Berrum-Plata was in the country illegally when he agreed to cooperate with the defendant in an FBI drug investigation. In return for his cooperation, the FBI supported his application for Significant Public Benefit Parole ("SPBP"). United States Immigration, Customs, and Enforcement ("ICE") granted his application, permitting him to remain in the country temporarily. See 8 CFR § 212.5(b) (an authorized immigration official may allow an illegal alien to remain in the United States if doing so would confer a "significant public benefit"). In this lawsuit, Berrum-Plata claims that the FBI (through Curtis)

improperly withdrew its support for his parole and arrested him without probable cause. Before delving any further into the facts, we will first address: (1) the unusual procedural history of this case; and (2) the defendant's motion to strike Berrum-Plata's response to his Local Rule 56.1 statement of facts.

**A. Procedural History & Curtis's Motion to Strike**

Berrum-Plata filed his original complaint, through counsel, against the United States, the Department of Homeland Security, ICE, and Curtis. His attorneys moved to withdraw their representation before the parties' first court appearance. In their motion, they stated that they could not continue to represent Berrum-Plata in light of unspecified "additional information" that they had received about his claims. (See Corrected Mot. to Withdraw, Dkt. 8, ¶¶ 1-2; see also id. at ¶ 3 (stating that they had "irreconcilable differences" with their client "over issues arising out of this litigation as well as over the management and direction of the litigation.").) After we gave his attorneys leave to withdraw, Berrum-Plata filed his *pro se* appearance. (See Pro Se Appearance, dated June 8, 2012, Dkt. 43.) We subsequently granted Berrum-Plata's motion to appoint counsel after the defendants moved to dismiss given the complexity of the issues and Berrum-Plata's limited English. (See Minute Entry, dated Oct. 10, 2012, Dkt. 22.) We ultimately granted the defendants' motion to dismiss. See Berrum-Plata v. U.S., No. 12 C 2065, 2013 WL 1344017, *3 (N.D. Ill.

Apr. 3, 2013).  We held that Berrum-Plata could not maintain a constitutional claim against the United States, the FBI, and ICE under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).  <u>See</u> <u>Berrum-Plata</u>, 2013 WL 1344017, *1 (citing <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 486 (1994) (declining to extend <u>Bivens</u> to claims against federal entities)).  And he could not assert state-law claims against the defendants (including Curtis) without exhausting his administrative remedies under the Federal Tort Claim Act ("FTCA").  <u>See</u> <u>id.</u> at *2; <u>see also</u> 28 U.S.C. § 2675 ("An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.").  With respect to his <u>Bivens</u> claim against Curtis, we held that the complaint did not contain enough factual information to state a plausible claim for relief.  <u>See</u> <u>Berrum-Plata</u>, 2013 WL 1344017, *1.  We dismissed Berrum-Plata's claims without prejudice and asked appointed counsel to remain in the case to help him prepare an amended complaint. <u>Id.</u>

After granting the plaintiff several extensions of time to amend his complaint, his appointed attorney moved to withdraw. Like Berrum-Plata's prior retained counsel, his appointed counsel cited "irreconcilable differences over issues arising out of this litigation including substantial disagreement over litigation strategy." (See Mot. to Withdraw, dated June 19, 2012, Dkt. 42, ¶ 4.) We granted the motion to withdraw and gave Berrum-Plata additional time to file an amended complaint *pro se*. On July 26, 2012, Berrum-Plata filed his amended complaint — the operative complaint in this case — naming Curtis as the sole defendant. We concluded that the complaint, although difficult to understand in places, was adequate to give Curtis notice of Berrum-Plata's claims. (See Order, dated Nov. 20, 2013, Dkt. 60.) But we were skeptical that Berrum-Plata could manage the litigation on a *pro se* basis going forward. (Id.) So, we again appointed counsel to represent him. Before appointed counsel even filed his appearance, he moved to withdraw: "in [counsel's] opinion, underlying facts discovered in his investigation and work to date do not give rise to a potentially successful cause of action." (Mot. to Withdraw, dated Dec. 19, 2013, Dkt. 64.) We granted this motion and denied as futile Berrum-Plata's request to appoint yet another attorney. (See Minute Entry, dated Jan. 22, 2014, Dkt. 71.)

In lieu of filing an answer, Curtis filed the present motion for summary judgment. Because Berrum-Plata was representing

himself *pro se* at that point, we gave him a date by which to respond to the defendant's Local Rule 56.1 statement and set a hearing date to discuss his response before scheduling further briefing. (<u>See</u> Minute Entry, dated Apr. 30, 2014, Dkt. 77.) A week after his response was due, Berrum-Plata filed his Local Rule 56.1 response (and a legal memorandum opposing summary judgment) through newly retained counsel. His response to Curtis's statement of facts does not cite any record evidence. <u>Cf.</u> L.R. 56.1(b)(3)(B) (The opposing party's response must include "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon."). Instead, Berrum-Plata filed a separate affidavit reciting his version of events and purporting to incorporate his Local Rule 56.1 responses by reference. (<u>See</u> Berrum-Plata Aff., Dkt. 82, ¶ 14.) He further confuses matters by stating bare denials in one paragraph, and then expounding on those denials in another. Here is paragraph six of Curtis's statement of facts:

> In late 2008, shortly after Berrum-Plata agreed to cooperate with the FBI, and after he was provided a copy of the admonishment referenced above, Berrum-Plata conducted an unauthorized narcotics transaction in Mexico. [Curtis Decl. ¶ 7.]

(Def.'s Stmt. ¶ 6.) In paragraph six of his response, Berrum-Plata merely states, "[p]laintiff denies the allegations of paragraph six." (Pl.'s Resp. at ¶ 6.) He then gives a lengthy narrative

response to the same paragraph — without any record citations —
later in his brief:

> Further responding to paragraph six, Plaintiff
> affirmatively states that he went to McAllen, TX, for the
> purpose of meeting drug traffickers and to see where they
> would send drugs from.  Agent Curtis knew that Plaintiff
> was making this trip.   The drug dealers were to pay
> $100/pound for brokering a marijuana transaction.  When
> he returned to Chicago, he was given $5,000.00 by the
> dealers.  Plaintiff took the $5,000.00 to Agent Curtis to
> show him that the persons he was informing on were in
> fact drug dealers and that he had been working as
> directed.  Agent Curtis reimbursed Plaintiff in cash for
> the cost of his bus ticket.  Also, upon information and
> belief, Agent Curtis was in communication with other FBI
> or Drug Enforcement Administration or other agents while
> Plaintiff was in McAllen, TX.   During the trip to
> McAllen, Plaintiff never went to Mexico.

(Pl's Resp. ¶ 30.)

We held a status hearing on April 30, 2014, as we had
previously contemplated.  During that hearing, we gave Curtis leave
to file a reply brief in support of his summary-judgment motion,
and gave Berrum-Plata an opportunity to file a sur-rely.   In
particular, we asked the parties to address whether Curtis could
revoke his support for Berrum-Plata's SPBP status at will, or if he
could only do so for cause.  The government addressed this issue in
its reply brief, and also moved to strike the plaintiff's Local
Rule 56.1 Statement for the deficiencies we just identified.
Berrum-Plata did not file his sur-reply until June 26, 2014, almost
a month after it was due.   In his memorandum, he asks us to
disregard Curtis's motion to strike as beyond the scope of the

briefing. We decline to do so. First, we did not direct the parties to discuss the "at will" issue only, and nothing else. Curtis was entitled to address the problems with Berrum-Plata's Local Rule 56.1 statement in his reply brief. Second, Berrum-Plata's attorney ignored Local Rule 56.1's requirements at his peril. See <u>Petty v. City of Chicago</u>, — F.3d —, 2014 WL 2568264, *4 (7th Cir. June 9, 2014) (slip op.) ("We have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.") (citation and internal quotation marks omitted). The plaintiff's Local Rule 56.1 response is clearly deficient, and Curtis's motion to strike is appropriate. The motion is granted, and the facts recited in Curtis's statement of facts are deemed admitted.[1] <u>See</u> L.R. 56.1(b)(3)(C).

**B.  Background Facts**

In late 2008, Berrum-Plata agreed to cooperate with the FBI's investigation of illegal drug trafficking in Chicago's south suburbs. (Def.'s Stmt. ¶ 1.) Berrum-Plata, a native of Mexico, was in the United States illegally at that time. (<u>Id.</u>) In exchange for his cooperation, the FBI asked ICE to grant Berrum-Plata SPBP status. (<u>Id.</u> at ¶ 2.) ICE granted the request, temporarily allowing Berrum-Plata to remain in the United States.

---

[1] As we discuss later in this opinion, we would grant Curtis's summary-judgment motion even if we considered Berrum-Plata's deficient responses.

(<u>Id.</u>)  In connection with his agreement to cooperate with the FBI, Curtis read Berrum-Plata a series of admonishments. (<u>Id.</u> at ¶ 4.) Among other things, Curtis explained that the FBI could not guarantee him any particular immigration status; only the Department of Homeland Security could make commitments regarding his right to remain in the United States.  (<u>Id.</u>)  He also admonished Berrum-Plata that he could not engage in any criminal activity without the FBI's prior approval, and that he could be prosecuted for any unauthorized criminal activity. (<u>Id.</u>) Shortly after receiving these admonishments, Berrum-Plata conducted an unauthorized narcotics transaction in Mexico.  (<u>Id.</u> at ¶ 6.) Curtis warned Berrum-Plata at that time that he had violated the conditions of his cooperation, and that further violations would result in the FBI revoking its support for his parole. (<u>Id.</u> at ¶ 7.)

In late January 2010, Berrum-Plata told Curtis that a drug dealer had asked him to find a large amount of marijuana for purchase. (<u>Id.</u> at ¶ 9.)  Curtis began arranging for a controlled drug transaction.  (<u>Id.</u>)  But before Curtis had obtained the necessary authorization, Berrum-Plata told him that he had brokered a 100-pound marijuana deal between the drug dealer and a supplier. (<u>Id.</u> at ¶ 10.)  In February 2010, Curtis told Berrum-Plata that the FBI no longer wanted his cooperation because of this unauthorized drug transaction.  (<u>Id.</u> at ¶ 11.)  He also told him that the FBI was considering revoking its support for his SPBP status.  (<u>Id.</u>)

After notifying his superiors about the plaintiff's admonishment violations, the FBI decided that it would no longer support his SPBP status. (Id. at ¶ 13.) Curtis informed ICE of the FBI's decision on or about February 23, 2010. (Id. at ¶ 14.) ICE accepted Curtis's offer to arrest Berrum-Plata himself once it revoked Berrum-Plata's SPBP status. (Id.)

On or about March 4, 2010, ICE revoked Berrum-Plata's parole. (Id. at ¶ 15.) He was still free on March 15, 2010 when the FBI learned from the Cook County Sheriff's Department that Berrum-Plata had attempted to sell three pounds of marijuana. (Id. at ¶ 16.) On March 23, 2010, Curtis arranged to meet Berrum-Plata in a parking lot near where they had met before during the FBI's drug investigation. (Id. at ¶¶ 17-19.) Curtis arrested Berrum-Plata at that time and told him that ICE had revoked his SPBP status because the FBI no longer supported his parole. (Id. at ¶ 20.) He also told Berrum-Plata that he would be delivered to ICE and promptly deported unless he contested deportation. (Id.) Curtis delivered Berrum-Plata to ICE that same day. (Id. at ¶ 21.)

On or about April 6, 2010, ICE instituted removal proceedings against the plaintiff. (Id. at ¶ 22.) He contested removal and, on December 20, 2011, an immigration judge granted his request for relief. (Id.)[2] Pursuant to the judge's order, ICE released Berrum-Plata on January 12, 2012 and placed him under supervision

---

[2] The record in this case does not reflect the basis for the immigration judge's ruling.

pending further review of his immigration status. (<u>Id.</u> at ¶ 22.) Berrum-Plata filed this lawsuit two months later. In his amended complaint, he alleges that Curtis arrested him without probable cause and seeks damages against him under <u>Bivens</u>. (<u>See</u> Am. Compl. at 1, 5-6.)

<u>**DISCUSSION**</u>

Curtis, citing qualified immunity, has moved for summary judgment on Berrum-Plata's <u>Bivens</u> claim.

**A.    Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. <u>See</u> <u>Pitasi v. Gartner Group, Inc.</u>, 184 F.3d 709, 714 (7th Cir. 1999). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Talanda v. KFC Nat'l Mgmt. Co.</u>, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence

that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

**B.    Berrum-Plata's _Bivens_ Claim for Illegal Seizure**

We ask two questions when analyzing a defendant's qualified-immunity defense: (1) did the defendant's conduct violate the plaintiff's constitutional rights?; and (2) was that particular constitutional right clearly established at the time of the alleged violation? Saucier v. Katz, 533 U.S. 194, 201 (2001) (_overruled in part by_ Pearson v. Callahan, 555 U.S. 223 (2009)).   To survive summary judgment on his Fourth Amendment claim, Berrum-Plata must raise a genuine dispute of material fact regarding whether Curtis had probable cause to arrest him.   See Woods v. City of Chicago, 234 F.3d 979, 995-96 (7th Cir. 2000); see also McBride v. Grice, 576 F.3d 703, 707 (7th Cir. 2009) ("Probable cause is an absolute bar to a § 1983 claim for false arrest"); Martin v. Sias, 88 F.3d 774, 775 (9th Cir. 1996) (Section 1983 and Bivens actions "are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens.") (citation and internal quotation marks omitted) (_cited with approval in_ Clemente v. Allen, 120 F.3d 703, 705 (7th Cir. 1997)).   A law enforcement officer has probable cause to arrest a suspect if, at the time of the arrest, the facts and circumstance within the officer's knowledge were sufficient to warrant a prudent person to believe that the suspect had committed

an offense.  <u>Gonzalez v. City of Elgin</u>, 578 F.3d 526, 537 (7th Cir. 2009).   Berrum-Plata quibbles about whether ICE's decision to revoke his SPBP status was effective prior to his arrest, citing immigration regulations providing that "parole shall be terminated upon *written notice* to the alien . . . ."  8 C.F.R. 212.5(e)(2)(1) (emphasis added).   Curtis was not required to investigate and confirm whether ICE had complied with the regulation's notice requirements.  He reasonably believed that ICE had revoked parole, and he was acting pursuant to ICE's request to arrest Berrum-Plata. He clearly had probable cause to arrest Berrum-Plata for being in the country illegally.   The result would be the same even if we overlooked Berrum-Plata's failure to comply with Local Rule 56.1. (<u>See</u> <u>supra</u>.)  He states in his affidavit that he did not engage in any unauthorized drug transactions.  (<u>See</u> Berrum-Plata Aff. ¶¶ 10-11, 15.)   But he was not arrested and charged for selling drugs. He was arrested for being in the United States illegally.

**C.   Breach of Contract and Related Theories**

We asked the parties to consider whether the arrangement between the FBI, ICE, and Berrum-Plata was terminable at will, or if it could only be terminated for cause.  Berrum-Plata admits that he received the following admonition:

> No promises or commitments can be made, except by the Department of Homeland Security (DHS), regarding the alien status of any person or the right of any person to enter or remain in the U.S.

("Operating Instructions to the Cooperating Human Source," attached as Ex. A to Curtis's Decl., at 2-3; Pl.'s Resp. to Def.'s Stmt. ¶ 4.) There is no evidence that the Department of Homeland Security, through ICE, ever made any commitment to Berrum-Plata. It granted Berrum-Plata's request for parole on the FBI's recommendation, but it was always free to terminate parole with or without the FBI's approval. <u>See</u> 8 CFR § 212.5(e)(2)(i). Its discretion is unfettered and not subject to judicial review. <u>See</u> <u>Samirah v. O'Connell</u>, 335 F.3d 545, 548 (7th Cir. 2003) (the Attorney General's decision to revoke parole under 8 CFR § 212.5(e)(2)(i) is not reviewable); <u>see also</u> 8 U.S.C. § 1252(a)(2)(B)(ii) ("Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ."). For that reason, aliens do not have a constitutionally protected liberty interest in parole. <u>Darif v. Holder</u>, 739 F.3d 329, 336 (7th Cir. 2014) ("We have repeatedly held that the opportunity for discretionary relief from removal is not a protected liberty interest because aliens do not have a legitimate claim of entitlement to it.").

Berrum-Plata nevertheless argues that he can proceed against Curtis on a breach-of-contract or a related theory. (<u>See</u> Pl.'s Sur-Reply at 2 (arguing that Curtis breached his promise); <u>id.</u> at

4 (suggesting, without developing the argument, that he might be entitled to relief under "contract principles. . . .").) That is, even if ICE always retained discretion to revoke parole, Curtis promised that he would support Berrum-Plata's SPBP application so long as he complied with the admonishments. First, under Curtis's version of events — which we have deemed to be true, see supra — he did not breach his promise because Berrum-Plata violated the terms of his cooperation at least twice. Second, even if we considered Berrum-Plata's response to the defendant's statement of facts, he could not assert a breach-of-contract claim against Curtis without first exhausting his administrative remedies under the FTCA. See 28 U.S.C. § 2675. It is clear that he has not done so, and the deadline for filing an FTCA claim has long since passed. See 28 U.S.C. § 2401 ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues.").

**D.  Habeas Corpus**

We reject Berrum-Plata's belated *habeas-corpus* theory. (See Pl.'s Sur-Reply at 3-4.) According to the plaintiff, he is in "custody" for purposes of 28 U.S.C. § 2241 because a paroled alien is deemed "legally detained at the border within the government's custody until his immigration status is determined." Samirah, 335 F.3d at 547. First, it is irrelevant whether a § 212.5 parolee is in government "custody" because ICE revoked Berrum-Plata's parole

over four years ago. When the removal proceedings terminated in his favor, ICE released him subject to an "order of supervision." (See Pl.'s Resp. to Def.'s Stmt. ¶ 22 (admitting that he was released from ICE custody in January 2012 and placed under supervision); Decl. of Limaris O'Farrill, attached as Ex. 2 to Def.'s Stmt., ¶ 15 ("On January 31, 2012, Berrum-Plata was released from ICE custody and placed on an order of supervision.").) Although we do not know the terms of Berrum-Plata's supervision, it appears unlikely that he is eligible for *habeas-corpus* relief. Cf. Fregis v. Holder, No. 2:13-cv-163-FtM-29DNF, 2014 WL 54839, *2 (M.D. Fla. Jan. 7, 2014) (a habeas petition is mooted by the petitioner's release subject to an order of supervision) (collecting cases). Second, Curtis is not a proper party to such a claim because he is not Berrum-Plata's custodian. Cf. Samirah, 335 F.3d at 551-52 ("The custodian, in most cases, 'is the person having a day-to-day control' over the petitioner, because he 'is the only one who can produce 'the body' of the petitioner.'") (quoting Guerra v. Meese, 786 F.2d 414, 416 (D.C. Cir. 1986)). Third, counsel's last-ditch *habeas-corpus* theory is far afield of Berrum-Plata's actual claim in this suit. There is simply no suggestion in his amended complaint that he wishes to contest his current immigration status. Instead, he wants compensation for Curtis's alleged broken promise. For the reasons we have just explained, Curtis is entitled to summary judgment on that claim.

## CONCLUSION

The defendant's motion for summary judgment [72] is granted.


DATE:      July 23, 2014


ENTER:     _____

           John F. Grady, United States District Judge